**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, <br><br> Defendants. | Case No. 6:20-cv-00479-ADA <br><br> **JURY TRIAL DEMANDED** |

## <u>DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND ................................................................................................2

    A.   The Asserted Patent ..................................................................................... 2

    B.   The Accused Products.................................................................................. 3

III. LEGAL STANDARD.........................................................................................5

    A.   Direct Infringement...................................................................................... 5

    B.   Induced and Contributory Infringement ...................................................... 6

IV.  ARGUMENT......................................................................................................7

    A.   Plaintiff Fails to Plausibly Allege That OME Monitors the "Rate of
        Change of the Usage" in a Node ................................................................. 7

    B.   Plaintiff Fails to Plausibly Allege That OMNM Monitors the "Rate
        of Change of the Usage" in a Node ......................................................... 10

    C.   Plaintiff Fails to State a Claim for Induced and Contributory
        Infringement............................................................................................... 11

        1.   Plaintiff's Indirect Infringement Claims Fail Without Direct
            Infringement ................................................................................... 11

        2.   Plaintiff Fails to Allege the Requisite Knowledge for Indirect
            Infringement ................................................................................... 12

        3.   Plaintiff Fails to Allege the Requisite Specific Intent for Induced
            Infringement ................................................................................... 13

        4.   Plaintiff Fails to Allege the Requisite Lack of Substantial
            Non-Infringing Uses for Contributory Unfringement ................................. 15

V.   CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
   620 F. App'x 934 (Fed. Cir. 2015) .................................................................6, 14

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
   No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...........................6, 7, 14

*Aguirre v. Powerchute Sports, LLC*,
   No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) .....................12, 13

*Amgen Inc. v. Coherus BioSciences Inc.*,
   931 F.3d 1154 (Fed. Cir. 2019).................................................................7, 8, 9

*Artrip v. Ball Corp.*,
   735 Fed. Appx. 708 (Fed. Cir. 2018) ...........................................................5, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................5, 10

*Auto–Dril, Inc. v. Nat'l Oilwell Varco*,
   L.P., 6:15–CV–00091, 2015 WL 12868183 (W.D. Tex. June 24, 2015), report
   and recommendation adopted, 2015 WL 11004538 (W.D. Tex. July 15, 2015).....................9

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
   C 11–04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012)...............................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
   904 F. Supp. 2d 1260 (M.D. Fla. 2012).............................................................13

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)..........................................................................6, 12

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018)....................................................................7, 9

*De La Vega v. Microsoft Corp.*,
   2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).......................................................6, 8

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
   No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).........................14

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018).................................................................................6, 11

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010).....................................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011).......................................................................................................6

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)......................14

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017)...............................................................................6, 11

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .........................................................................................5

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) .........................................................................................9

*Metricolor LLC v. L'Oreal S.A.*,
   791 Fed.Appx. 183 (Fed. Cir. 2019) .............................................................................9

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...........13, 14

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681-DOC-ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012)..................13

*The B.V.D. Licensing Corp. v. Body Action Design, Inc.*,
   846 F.2d 727 (Fed. Cir. 1988)........................................................................................4

*Xpoint Technologies, Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010)..............................................................................13

**Statutes**

35 U.S.C. § 271(a) ...................................................................................................................5

**Rules**

Fed. R. Evid. 201(b)................................................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '129 patent | U.S. Patent No. 8,402,129 |
| Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| OME | OpenManage Enterprise |
| OMNM | OpenManage Network Manager |
| WSOU or Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## I.      INTRODUCTION

Plaintiff has not plausibly alleged—and cannot plausibly allege—infringement in this case because it seeks to capture subject matter that was unequivocally disavowed during patent prosecution.  The '129 patent describes and claims an alleged improvement to network monitoring involving tracking the "rate of change" of attributes at different network nodes, as opposed to the prior art techniques of measuring network attributes at a single point in time.  During prosecution, the applicant for the '129 patent repeatedly distinguished its claimed technique of measuring a rate of change of attributes over the prior art technique of measuring attributes at a single point in time. Contrary to what the patent applicant told the Patent Office during patent prosecution, Plaintiff now argues direct infringement based on a theory that attributes in Defendants networks are monitored at a single point in time.  This departure from the prosecution history of the '129 patent cannot support a claim for infringement.  According to Plaintiff's own allegations, the two network management techniques accused of infringement in this case, OME and OMNM, do precisely what the patent and the prosecution history admit as being within the prior art.  OME and OMNM, therefore, cannot directly infringe the '129 patent.

Plaintiff's indirect infringement claims are likewise fatally flawed.  First, if there is no direct infringement, there cannot be indirect infringement.   Second, these claims of indirect infringement are based entirely on knowledge of the patent beginning on the filing date of the Complaint.  Finally, they fail to plead the requirements of induced and contributory infringement.

This is a textbook case for dismissal on the pleadings under *Iqbal* and *Twombly*.  Plaintiff's failure goes beyond mere failure to plead sufficient facts.  Not only has Plaintiff failed to even plausibly allege infringement, its factual allegations, including the very documents up on which it relies, demonstrate it has no claim.  This case should be dismissed.

II.    **BACKGROUND**

A.    **The Asserted Patent**

The '129 patent, which is titled "Method and apparatus for efficient reactive monitoring,"

generally relates to monitoring network resources based on the "rate of change" of system usage

at those network resources.  According to the patent, prior art network monitoring systems had the

ability to track usage across a network.  '129 patent, 1:14-26.  The patent explains that this could

be done using "reactive monitoring."  "With reactive monitoring, the management station needs

information about the network state in order to react (in real or semi-real time) to certain alarm

conditions that may develop in the network." *Id.*, 1:25-38.

The patent explains that one prior art technique for doing this is for the network nodes to

send alerts to the network monitor when certain conditions are met, e.g., when the instantaneous

value of an attribute hits a certain threshold.  *Id.*, 1:5-58.  To improve upon existing reactive

monitors, the patent discloses that network nodes could generate alerts when the "rate of change"

of the monitored variable exceeds a threshold.  *See id.*, 6:37-44; *see also id.* Figs. 4-6.

Plaintiff has asserted claim 3:

3. A method for monitoring usage of a resource in nodes of a network, comprising the steps of:

(a) monitoring usage of the resource in a node to determine when a ***rate of change of the usage*** exceeds a first predetermined threshold;

(b) reporting to a management station of the network when the ***rate of change of the usage*** exceeds said first predetermined threshold; and

(c) initiating a poll of resources in the nodes of the network by the management station in response to reporting from the node or a time interval being exceeded.

2

*Id.*, cl. 1.[1]

During prosecution of the patent, the applicant repeatedly distinguished between tracking the "rate of change" of an attribute and prior art references that only taught "instantaneous value[s] measured at a fixed point in time" or "generic parameters that may be measured or tested relative to predefined thresholds." Rosenthal Decl., Ex. A (File History for '129 patent) at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8. In other words, to procure the patent, the applicant made clear that the "rate of change" is how much a parameter changes over time, not just the value of the parameter at a single point in time. *See id.*

### B.    The Accused Products

Plaintiff alleges infringement of claim 3 by two separate applications: OpenManage Enterprise ("OME") and OpenManage Network Manager ("OMNM"). As described by the documents cited in the Complaint, OME is a hardware management application that oversees a number of "managed nodes" by providing remote capabilities such that management can be performed in a centralized location. Rosenthal Decl., Ex. B (OME User Guide) at 19. One of the many features that OME provides is the ability to receive "alerts" from the different nodes that it manages in a single log via the OME platform. There are different types of alerts that may be generated, as depicted in the following table:

---

[1] A limitation requiring a "rate of change" is required in every independent claim. *See* '129 patent, cls. 1, 3, 4, 5, 6.

Table 187. Alert types

| Icon | Alert | Description |
| --- | --- | --- |
| Figure 29. Normal alert icon | Normal Alerts | An event from a server or a device that describes the successful operation of a unit, such as a power supply turning on or a sensor reading returning to normal. |
| Figure 30. Warning alert icon | Warning Alerts | An event that is not necessarily significant, but may indicate a possible future problem, such as crossing a warning threshold. |
| Figure 31. Critical alert icon | Critical Alerts | A significant event that indicates actual or imminent loss of data or loss of function, such as crossing a failure threshold or a hardware failure. |
| Figure 32. Unknown alert icon | Unknown Alerts | An event has occurred but there is insufficient information to classify it. |
| Figure 33. Information alert icon | Information Alerts | Provides information only. |

*Id.* at 251.  These alerts are used to provide instantaneous values to OME about alarms and other attributes of a specific managed node, such as whether a power supply or cooling device is functioning properly or the readings of certain sensors.  *See id.* at 251-52.  All of the values provided to the OME application are instantaneous; none are rates of change.

OMNM is a different software application that is no longer sold by Defendants, effective February 4, 2019.  *See* Rosenthal Decl., Ex. C (https://www.dell.com/support/article/en-us/how16844/changes-to-the-sales-and-support-processes-for-dell-emc-openmanage-network-manager?lang=en).[2]  OMNM is a management application that provides information about a network.  In addition to many other features, OMNM provides an interface to monitor alarms from

---

[2] *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *The B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and whatever is generally known within their jurisdiction. To that end, dictionaries and encyclopedias may be consulted." (citations omitted)).

managed nodes.  Rosenthal Decl., Ex. D OMNM User Guide at 17.  These are the same node-specific alerts tracked by OME.  *See* Compl. ¶ 16.  Again, none of the alerts tracks rate of change.

## III.   LEGAL STANDARD

### A.   Direct Infringement

A complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted."  The complaint must include more than "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must allege non-conclusory facts that make liability "plausible," meaning the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).  Additionally, "under any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'"  *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent).  Only those complaints which state a plausible claim for relief survive a motion to dismiss, and the reviewing court makes this determination by drawing on its "judicial experience and common sense." *Ashcroft*, 556 U.S. at 679; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.").  For a claim of patent infringement, the alleged infringer can only be liable if it "makes, uses, offers to sell, or sells" the allegedly infringing product.  *See* 35 U.S.C. § 271(a).

This requires that the plaintiff—at a minimum—plead facts that identify an allegedly infringing product and describe how that allegedly infringing product infringes. *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

### B.    Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both induced and contributory infringement, Plaintiff must plead facts to support an inference of each defendant's "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that each defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7, *21. Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the

invention." *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## IV.   ARGUMENT

The critical limitation that persuaded the patent examiner to allow the claims of the '129 patent is monitoring "when a rate of change of the usage" in a node exceeds a threshold.   During prosecution, the applicants distinguished the tracking of a "rate of change" of a variable over time from merely checking the instantaneous value of the variable.   Ex. A at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8.[3]   Plaintiff has not alleged, and cannot allege, any facts supporting the "rate of change" limitation for either OME or OMNM.   To the contrary, all of Plaintiff's allegations and evidence show checking the ***instantaneous*** value of a variable, which was distinguished from the plain language of the asserted claim during prosecution.

Plaintiff's indirect infringement allegations are also deficient, as shown below.

### A.   Plaintiff Fails to Plausibly Allege That OME Monitors the "Rate of Change of the Usage" in a Node

Despite the critical nature of the "rate of change" limitation in the claims, specification and prosecution history, the Complaint includes only a single conclusory allegation related to the "rate of change" limitation:   "The Accused Products use SNMP traps to monitor the rate of change of attributes of a device."   Comp. ¶ 18.   This sole allegation that a claim limitation is met is not enough to survive a motion to dismiss because Plaintiff did not plead any underlying facts that support such an allegation.   *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir.

---

[3]   *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ("On a motion for judgment on the pleadings . . . the court may consider 'matters of public record' . . . Prosecution histories constitute public records.")

2019) (affirming dismissal on the pleadings based on failure to state a plausible infringement theory); *De La Vega*, 2020 WL 3528411, at *6–7.

Plaintiff does not allege any facts that would support the allegation that OME meets the critical "rate of change" limitation.  To the contrary, all of the allegations and facts in the Complaint show that OME *only* tracks instantaneous values of attributes—*i.e.*, exactly what the prior art did and what was distinguished by the applicants.  *See supra* Section II.A.  For example, Plaintiff alleges:  "The Accused Products have the power to monitor *attributes* of a device and generate alerts on *crossing a threshold*."  Compl., ¶19 (emphases added).  This factual allegation asserts that alarms are generated when the instantaneous value of an attribute crosses a threshold.  It does not allege, as would be required by the claims, that the alarm can be generated if the *rate of change* of the attribute being monitored crosses a threshold.  This is not merely a technicality.  The applicants consistently distinguished between the "rate of change" of an attribute and the instantaneous value of an attribute in the prosecution history.  Ex. A at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8.

The documents cited by Plaintiff further confirm that the alerts provided by the accused functionality are based on the instantaneous value of the attributes themselves, *not* any alleged "rate of change" of those attributes.  For example, the documents Plaintiff cites show that OME triggers an alert when "a power supply turn[s] on," "a sensor reading returns to normal," "crossing a warning threshold," or "crossing a failure threshold or a hardware failure."  Ex. B (OME User Guide) at 251.  None of these triggers support the "rate of change" limitation.  *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal on the pleadings based on admissions in the prosecution history).

That OME does not track the "rate of change" of any attributes is not surprising. The '129 patent described checking the "rate of change" at individual nodes to check the global health of the network. '129 patent, 1:58-60. OME, on the other hand, is used to track the health of the managed nodes in the systems, not check for global network issues. Ex. B (OME User Guide) at 251. Plaintiff's allegations as to OME must therefore be dismissed for failure to allege facts as to this key limitation.

The Federal Circuit has granted motions to dismiss in these circumstances. *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming grant of a motion to dismiss because prosecution history estoppel barred patentees from succeeding on their infringement claim under doctrine of equivalents); *Metricolor LLC v. L'Oreal S.A.*, 791 Fed.Appx. 183, 188 (Fed. Cir. 2019) (finding that a patent claim was not sufficiently pleaded when the alleged functionality "plainly contradicted" the actual claim limitation).

Here that Plaintiff accuses the same technology that was distinguished during prosecution is dispositive on this motion to dismiss. A court may "consider documents attached to or incorporated into the Complaint and matters of which judicial notice may be taken." *Auto–Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 6:15–CV–00091, 2015 WL 12868183, at *2 (W.D. Tex. June 24, 2015), report and recommendation adopted, 2015 WL 11004538 (W.D. Tex. July 15, 2015); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). "On a motion for judgment on the pleadings . . . the court may consider 'matters of public record' . . . Prosecution histories constitute public records." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018).

**B.**     **Plaintiff Fails to Plausibly Allege That OMNM Monitors the "Rate of Change of the Usage" in a Node**

Again, Plaintiff's only allegation related this critical limitation is a conclusory sentence related to SNMP traps.  Comp. ¶ 18.  Not only is this insufficient as a matter of pleading, but the facts and documents cited in the Complaint contradict this naked allegation.  *Ashcroft*, 556 U.S. at 678 (2009).  For example, in the very next sentence, Plaintiff alleges:  "These SNMP traps can be configured to generate alarms if the ***attributed being monitored crosses a threshold***, and this alarm can be sent to a device on which [OMNM] is installed."  *Id.* (Emphasis added.)  This factual allegation asserts that alarms are generated when an "attribute being monitored crosses a threshold"—*i.e.*, exactly what the prior art did; and exactly what the applicants distinguished. Plaintiff's allegations do not suggest in any way that the alarm can be generated if the ***rate of change*** of the attribute being monitored crosses a threshold.

Much like OME, OMNM describes receiving alerts from managed nodes about the general health of the individual nodes.  For example, OMNM can pull this information directly from OME. *See* Compl. ¶ 16.  As with OME, none of the alarms are based on any "rate of change."  Indeed, OMNM has a separate additional functionality in which it uses periodic polling to monitor the overall performance of the network.  *See* OMNM User Guide at 359-444; Compl. ¶ 18.  But the patent discusses tracking the "rate of change" at individual nodes as a means of avoiding this periodic polling.  *See* '129 patent, 2:16-19.  In other words, OMNM does precisely what the patentee describes as a deficiency of the prior art; it does not monitor the "rate of change" at a particular node as claimed.  *See* '129 patent, 1:46-50, cl. 1.  As such, Plaintiff has not plausibly

alleged—and cannot plausibly allege—facts to suggest that OMNM tracks any alleged "rate of change" of a resource of the managed nodes.[4]

### C.  Plaintiff Fails to State a Claim for Induced and Contributory Infringement

Plaintiff's indirect infringement claims are deficient and should be dismissed.  As an initial matter, Plaintiff's failure to plausibly allege direct infringement by a third party precludes its claims of induced and contributory infringement.  Beyond that failing, Plaintiff has failed to plead any knowledge by Defendants of the patent, or knowledge by Defendants of alleged infringement, ***prior*** to the filing of this action.  Plaintiff also fails to plead a specific intent to induce infringement.  And, Plaintiff has not pled, and cannot plead, that that there are no substantial non-infringing uses.  Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

#### 1.  Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement by a third party.  *See supra* § [IV.A].  It is axiomatic that "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement . . . ."  *Enplas*, 909 F.3d at 407 (citations omitted); *see also Intellectual*

---

[4] Even if Plaintiff had plausibly stated a claim as to OMNM, OMNM is no longer sold by Dell.  *See* Ex. C (https://www.dell.com/support/article/en-us/how16844/changes-to-the-sales-and-support-processes-for-dell-emc-openmanage-network-manager?lang=en).  As such, to the extent Plaintiff's allegations rely upon OMNM to meet certain limitations, Dell is not the correct target of this lawsuit.  Plaintiff should have been well aware of this fact as it relies upon manuals for OMNM from Dorado Software, Inc. ("Dorado").  *See* Compl. ¶ 18.  As already explained, Plaintiff has not, and cannot, allege that OME meets the "rate of change" limitations.  To the extent Plaintiff is allowed to amend, Plaintiff should be required to amend the Complaint to provide factual allegations sufficient to state a cause of action specifically against OME and its claim as to OMNM must be dropped against Defendants.

*Ventures*, 870 F.3d at 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement . . .").  As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement, and these claims should be dismissed.

### 2. Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement

Plaintiff's indirect infringement allegations fail because they do not plead the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926 (2015).  As courts in this District have held, the knowledge requirements for indirect infringement require ***pre-suit*** knowledge.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement.").

Despite this clear requirement, Plaintiff's sole allegations of knowledge of the patent is a conclusory statement that "Defendants have received notice and actual or constructive knowledge of the '129 Patent ***since at least the date of service of this Complaint***."  Compl. at ¶ 24 (emphasis added).[5]  This Court has rejected identical allegations of knowledge.  For example, in *Parus*, this Court dismissed indirect infringement claims where plaintiff's only allegation of knowledge of the patent was that "Defendant Apple has had knowledge of the '431 Patent ***since at least the filing of the original complaint***."  *Parus*, No. 6:19-cv-432, at D.I. 28 (Amended Compl.) at ¶ 44

---

[5]  Plaintiff's allegations of knowledge of infringement are likewise deficient as they allege such knowledge only "[s]ince at least the date of service of this Complaint."  Compl. at ¶ 25; *see e.g.*, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims where the only allegations of knowledge of infringement were that "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement of the claims of the '431 Patent." (D.I. 28 (Amended Compl.) at ¶ 44)).

(emphasis added); *see id.* at Feb. 20, 2020 Text Order GRANTING D.I. 54 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims).  Like the allegations in *Parus*, Plaintiff fails to allege pre-suit knowledge and thus fails to state a claim for indirect infringement.  *See id.*; *Aguirre*, 2011 WL 2471299, at *3; *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("Also, because notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in Global–Tech that an allegation of knowledge of the patent is required to state a claim for induced infringement.").[6]

Plaintiff's failure to allege pre-suit knowledge is even more damning for OMNM, which Defendants stopped selling and supporting February 4, 2019, ***well over a year before any alleged knowledge***.

### 3.   Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, ***directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities***.'"  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med.*, 471 F.3d at 1306).  Plaintiff's

---

[6] Other courts similarly have held that "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, C 11–04049 JW, 2012 WL 1030031, *4 (N.D. Cal. Mar. 22, 2012); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681-DOC-ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012); *Brandywine*, 912 F. Supp. 2d at 1345 ("The weight of authority addressing the knowledge required for indirect infringement . . . requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit.").

allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through thier advertising, promotional materials, and website citations. *See* Compl. at ¶ 25.[7]  Such conclusory allegations fail to present facts that demonstrate:  (1) Defendants knew that the alleged acts would infringe, and (2) Defendants knew that the promotion of their products would induce or encourage others to infringe the Asserted Patent.  *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, 21 (finding "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient.").  To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—i.e., "evidence of culpable conduct, directed to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[8]

Plaintiff's inducement claim should be dismissed because the Complaint is entirely silent on a key requirement of induced infringement.

---

[7]  Plaintiff never once alleges that these third parties *actually* infringed.

[8]  *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint." (emphasis in original)); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

### 4.   Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses for Contributory Unfringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'"  *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 713 (Fed. Cir. 2018) (citations omitted).  Plaintiff has not pled a lack of substantial non-infringing uses because it cannot do so.  Plaintiff's only allegation on these elements are a conclusory statement that repeats the legal elements.  *See* Compl. at ¶ 26.  As the Federal Circuit held in *Artrip* conclusory allegations are not enough.  735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use.").  Furthermore, Plaintiff cannot plead facts to support these elements because the Accused Products may not be configured to use SNMP traps, which are central to Plaintiff's allegations.  Plaintiff's failure to raise a plausible inference of no substantial non-infringing uses is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss WSOU's Complaint in its entirety for failure to plausibly state a claim for relief, without leave to amend.  Pursuant to L.R. CV-7(h), Defendants request an oral hearing on the foregoing motion.

Dated:  October 5, 2020

By:   */s/ Barry K. Shelton*
_____

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX  78734-4775
Telephone:  512.263.2165
Facsimile:  512.263.2166

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Kyanna Sabanoglu
ksabanoglu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 5th day of October 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
