**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>        Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,<br><br>        Defendants. | Case No. 6:20-cv-00479-ADA<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM</u>**

**TABLE OF CONTENTS**

<u>Page</u>

I.   BACKGROUND ..................................................................................................2

    A.   The Asserted Patent...............................................................................2

    B.   The Accused Products ............................................................................3

II.   LEGAL STANDARD.........................................................................................5

    A.   Direct Infringement ...............................................................................5

    B.   Induced and Contributory Infringement.................................................6

III.   ARGUMENT .....................................................................................................7

    A.   Plaintiff Fails to Plausibly Allege That OME Monitors The "Rate Of
        Change Of The Usage" In A Node .........................................................8

    B.   Plaintiff Fails to Plausibly Allege That OMNM Monitors The "Rate Of
        Change Of The Usage" In A Node .......................................................10

    C.   Plaintiff Fails To State A Claim For Induced And Contributory
        Infringement .........................................................................................11

        1.   Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement....11

        2.   Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement .11

        3.   Plaintiff Fails to Allege the Requisite Specific Intent for Induced
            Infringement..............................................................................14

        4.   Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses
            for Contributory Infringement ...................................................15

IV.   CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ...................................................................6, 14

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ...................................7, 14

*Aguirre v. Powerchute Sports, LLC*,
No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ...........................11

*Amgen Inc. v. Coherus BioSciences Inc.*,
931 F.3d 1154 (Fed. Cir. 2019).....................................................................8, 9

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) ...................................................................6, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................5, 6

*Auto–Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
6:15–CV–00091, 2015 WL 12868183 (W.D. Tex. June 24, 2015), report and
recommendation adopted, 2015 WL 11004538 (W.D. Tex. July 15, 2015).........................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................5

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
904 F. Supp. 2d 1260 (M.D. Fla. 2012)..............................................................13

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .........................................................................3

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015).............................................................................6, 11

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018).....................................................................7, 10

*De La Vega v. Microsoft Corp.*,
2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)........................................................6, 8

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).................................15

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)..................................................14

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
   C.A. No. 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020).....................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018)..............................................6, 11

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010)..................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)..........................................................7

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019)...................15

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017)............................................6, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .....................................3, 5, 9, 10

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...................................................6

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) .................................................10

*Metricolor LLC v. L'Oreal S.A.*,
   791 Fed.Appx. 183 (Fed. Cir. 2019)............................................9

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
   No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015).........13

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...........14

*Parus Holdings Inc. v. Apple Inc.*,
   No. 6:19-cv-432 (Feb. 20, 2020) ..............................................12

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ...........13

*Simplivity Corp. v. Springpath, Inc.*,
   No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)...............13

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*The B.V.D. Licensing Corp. v. Body Action Design, Inc.*,
   846 F.2d 727 (Fed. Cir. 1988)..................................................................................4

*VLSI Tech. LLC v. Intel Corp.*,
   C.A. No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019)......................................12

*WSOU v. Dell Inc., et al.*,
   No. 6-20-cv-00410............................................................................................13

**STATUTES**

35 U.S.C. § 271(a) ...............................................................................................6

**RULES**

Fed. R. Evid. 201(b)...............................................................................................4

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '129 patent | U.S. Patent No. 8,402,129 |
| Amended Complaint or Am. Comp. | First Amended Complaint For Patent Infringement, Dkt. 33 |
| Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| OME | OpenManage Enterprise |
| OMNM | OpenManage Network Manager |
| Original Complaint or Original Compl. | Original Complaint For Patent Infringement (D.I. 1) |
| WSOU or Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## I.   INTRODUCTION

Plaintiff's Amended Complaint is even **more** deficient than its Original Complaint. Plaintiff's Original Complaint made only an unsupported allegation that the accused products met the key limitation that the applicant used to distinguish the prior art, *i.e.*, measuring the "rate of change" of an attribute of a network node.  After Defendants pointed out that this unsupported allegation was insufficient and contrary to the cited evidence, Plaintiff apparently tested the Accused Products and **removed that unsupported allegation**.  The Amended Complaint is now **completely silent** about the critical limitation, "rate of change," that got the claims allowed.  This is tantamount to an admission that there is no basis for alleging infringement.  Instead, Plaintiff alleges infringement based on alleged monitoring of attributes at a single point in time, which is the **opposite** of what the applicant told the Patent Office is covered by the claims.  The direct infringement allegations must therefore be dismissed.

The indirect infringement allegations fare no better.  Plaintiff's Original Complaint alleged knowledge of the patent only as of the date of the Complaint, which this Court has repeatedly held is insufficient to sustain a claim of indirect infringement.  The Amended Complaint tries—and fails—to circumvent that clear rule by alleging knowledge based on a complaint Plaintiff earlier filed and dismissed before filing the present case.  Neither basis is sufficient; Plaintiff still has not adequately alleged pre-suit knowledge of the patent.  The indirect allegations also fail to allege other requisite elements of induced and contributory infringement.

This is a textbook case for dismissal on the pleadings under *Iqbal* and *Twombly*.  Defendant pointed out a critical deficiency in Plaintiff's allegations.  Plaintiff amended its complaint, but the same fundamental problem remains.  Plaintiff's inability to address the deficiencies shows that

further opportunity to amend would be futile.  Indeed, the very documents upon which Plaintiff relies contradict any claim for infringement.  This case should be dismissed.

## II.      BACKGROUND

### A.      The Asserted Patent

The '129 patent, which is titled "Method and apparatus for efficient reactive monitoring," generally relates to monitoring network resources based on the "rate of change" of system usage at those network resources.  According to the patent, prior art network monitoring systems had the ability to track usage across a network.  '129 patent, 1:14-26.  The patent explains that this could be done using "reactive monitoring."  "With reactive monitoring, the management station needs information about the network state in order to react (in real or semi-real time) to certain alarm conditions that may develop in the network."  *Id.*, 1:25-38.

The patent explains that one prior art technique for doing this is for the network nodes to send alerts to the network monitor when certain conditions are met, *e.g.*, when the instantaneous value of an attribute hits a certain threshold.  *Id.*, 1:5-58.  To improve upon existing reactive monitors, the patent discloses that network nodes could generate alerts when the "rate of change" of the monitored variable exceeds a threshold.  *See id.*, 6:37-44; *see also id.*, Figs. 4-6.

Plaintiff has asserted claim 3:

3. A method for monitoring usage of a resource in nodes of a network, comprising the steps of:

> (a) monitoring usage of the resource in a node to determine when a ***rate of change of the usage*** exceeds a first predetermined threshold;

> (b) reporting to a management station of the network when the ***rate of change of the usage*** exceeds said first predetermined threshold; and

> (c) initiating a poll of resources in the nodes of the network by the management station in response to reporting from the node or a time interval being exceeded.

2

*Id.*, cl. 1 (emphases added).[1]

During prosecution of the patent, the applicant repeatedly distinguished between tracking the "rate of change" of an attribute and prior art references that only taught "instantaneous value[s] measured at a fixed point in time" or "generic parameters that may be measured or tested relative to predefined thresholds."  Rosenthal Decl., Ex. A (File History for '129 patent) at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8.  In other words, to procure the patent, the applicant made clear that the "rate of change" is how much a parameter changes over time, not just the value of the parameter at a single point in time.  *See id.*

### B.    The Accused Products

Plaintiff alleges infringement of claim 3 by two separate applications:  OpenManage Enterprise ("OME") and OpenManage Network Manager ("OMNM").  As described by the documents cited in the Amended Complaint, OME is a hardware management application that oversees a number of "managed nodes" by providing remote capabilities such that management can be performed in a centralized location.  Rosenthal Decl., Ex. B (OME User Guide) at 19.[2]  One of the many features that OME provides is the ability to receive "alerts" from the different nodes that it manages in a single log via the OME platform.  There are different types of alerts that may be generated, as depicted in the following table:

---

[1] A limitation requiring a "rate of change" is required in every independent claim.  *See* '129 patent, cls. 1, 3, 4, 5, 6.

[2] The OME User Guide was incorporated into the Complaint.  Am. Compl., ¶ 24; *see Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000))).

Table 187. Alert types

| Icon | Alert | Description |
|---|---|---|
| ✅<br><br>**Figure 29. Normal alert icon** | Normal Alerts | An event from a server or a device that describes the successful operation of a unit, such as a power supply turning on or a sensor reading returning to normal. |
| ⚠️<br><br>**Figure 30. Warning alert icon** | Warning Alerts | An event that is not necessarily significant, but may indicate a possible future problem, such as crossing a warning threshold. |
| ❌<br><br>**Figure 31. Critical alert icon** | Critical Alerts | A significant event that indicates actual or imminent loss of data or loss of function, such as crossing a failure threshold or a hardware failure. |
| ❔<br><br>**Figure 32. Unknown alert icon** | Unknown Alerts | An event has occurred but there is insufficient information to classify it. |
| ℹ️<br><br>**Figure 33. Information alert icon** | Information Alerts | Provides information only. |

*Id.* at 251.  These alerts are used to provide instantaneous values to OME about alarms and other attributes of a specific managed node, such as whether a power supply or cooling device is functioning properly or the readings of certain sensors.  *See id.* at 251-52.  All of the values provided to the OME application are instantaneous; none are—or are alleged to be—rates of change.

OMNM is a third-party software application that is no longer sold as OEM software by Defendants, effective February 4, 2019.  *See* Rosenthal Decl., Ex. C (https://www.dell.com/support/article/en-us/how16844/changes-to-the-sales-and-support-processes-for-dell-emc-openmanage-network-manager?lang=en).[3]  OMNM is a management application that provides information about a network.  In addition to many other features, OMNM

---

[3] *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *The B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and whatever is generally known within their jurisdiction.  To that end, dictionaries and encyclopedias may be consulted." (citations omitted)).

provides an interface to monitor alarms from managed nodes.  Rosenthal Decl., Ex. D OMNM User Guide at 17.[4]  These are the same node-specific alerts tracked by OME.  *See* Compl. ¶ 16. Again, none of the alerts track rate of change.

Plaintiff's indirect infringement allegations in its Original Complaint amounted to three sentences that parrot the legal elements and two website links that fail to support Plaintiff's claims. *See* Original Compl. ¶¶ 24–26.  Those allegations completely failed to allege that Defendants had knowledge of the patent and knowledge of the infringement ***before*** Plaintiff filed suit.  *See id.*

Plaintiff's Amended Complaint fails to fix the deficiencies in the Original Complaint. Plaintiff now alleges knowledge of the patent based on the filing, and dismissal, of an earlier complaint—which was not served—asserting the same patent.  *See* Am. Compl. ¶ 20.

## III.   LEGAL STANDARD

### A.   Direct Infringement

A complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted."  The complaint must include more than "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must allege non-conclusory facts that make liability "plausible," meaning the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

---

[4] The OMNM User Guide was incorporated into the Complaint.  Am. Compl., ¶ 24; *see Lone Star*, 594 F.3d at 387.

and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).   Additionally, "under any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'" *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent).   Only those complaints which state a plausible claim for relief survive a motion to dismiss, and the reviewing court makes this determination by drawing on its "judicial experience and common sense." *Ashcroft*, 556 U.S. at 679; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.").   For a claim of patent infringement, the alleged infringer can only be liable if it "makes, uses, offers to sell, or sells" the allegedly infringing product.   *See* 35 U.S.C. § 271(a). This requires that the plaintiff—at a minimum—plead facts that identify an allegedly infringing product and describe how that allegedly infringing product infringes.   *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

### B.     Induced and Contributory Infringement

To plead indirect infringement, the complaint must first plead direct infringement by a third party.   *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("A finding of direct infringement is predicate to any finding of indirect infringement[.]"); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (same).

For both induced and contributory infringement, plaintiff must also plead facts to support an inference of each defendant's "knowledge of the patent in suit and knowledge of patent infringement."   *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

For induced infringement, Plaintiff additionally must plead facts showing that each defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7, *21. Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

For contributory infringement, Plaintiff must also plead "that the component has no substantial noninfringing uses, and [] that the component is a material part of the invention." *Affinity Labs*, 2014 WL 2892285, at *8 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

## IV.   ARGUMENT

The critical limitation that persuaded the patent examiner to allow the claims of the '129 patent is monitoring "when a rate of change of the usage" in a node exceeds a threshold. During prosecution, the applicants distinguished the tracking of a "rate of change" of a variable over time from merely checking the instantaneous value of the variable. Ex. A at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8.[5] Plaintiff has not alleged, and cannot allege, that the "rate of change" limitation is met for either OME or OMNM. To the contrary, all of Plaintiff's allegations and evidence show checking the ***instantaneous*** value of a variable, which was distinguished from the plain language of the asserted claim during prosecution. Even after

---

[5] *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ("On a motion for judgment on the pleadings . . . the court may consider 'matters of public record' . . . Prosecution histories constitute public records.").

apparently performing "Product Testing" and amending its Complaint, Plaintiff tellingly still cannot allege that the accused Products meet the "rate of change" limitation.

Plaintiff's indirect infringement allegations also remain fatally deficient, as shown below.

### A.   Plaintiff Fails to Plausibly Allege That OME Monitors The "Rate Of Change Of The Usage" In A Node

Despite the critical nature of the "rate of change" limitation in the claims, specification and prosecution history, the Amended Complaint entirely *ignores* the "rate of change" limitation.  Nor does Plaintiff allege any facts that could support such an allegation.  *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal on the pleadings based on failure to state a plausible infringement theory); *De La Vega*, 2020 WL 3528411, at *6–7. Although, in its Original Complaint, Plaintiff made the unsupported allegation that the "rate of change" limitation was met (Original Compl. at 18), that allegation was removed in the Amended Complaint.  The Amended Complaint is now entirely devoid of any allegations or facts to suggest this critical limitation is met.

None of the facts alleged by Plaintiff suggest that OME meets the critical "rate of change" limitation.  To the contrary, all of the allegations and facts in the Complaint show that OME *only* tracks instantaneous values of attributes—*i.e.*, exactly what the prior art did and exactly what was distinguished by the applicants.  *See supra* Section II.A.  For example, Plaintiff alleges that network resources can track "system board current of the device" and generate an alert when the current "reaches beyond the upper warning threshold."  Am. Compl., ¶ 17.  This factual allegation asserts that alarms are generated when the instantaneous value of an attribute—system board current—crosses a threshold.  It does not allege, as would be required by the claims, that the alarm can be generated if the *rate of change* of that current crosses a threshold.  Indeed, the measurement of an instantaneous value crossing a threshold is exactly what the applicant consistently

distinguished from monitoring a "rate of change" during prosecution.  Ex. A at May 2, 2007 Applicant Response, 7; September 17, 2007 Applicant Response, 8.

The documents Plaintiff cites further confirm that the alerts provided by the accused functionality are based on the instantaneous value of the attributes themselves, ***not*** any alleged "rate of change" of those attributes.  For example, they show that OME triggers an alert when "a power supply turn[s] on," "a sensor reading returns to normal," "crossing a warning threshold," or "crossing a failure threshold or a hardware failure."  Ex. B (OME User Guide) at 251.[6]  None of these triggers support the "rate of change" limitation.  *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal on the pleadings based on admissions in the prosecution history).  Even after undertaking "Product Testing," Plaintiff has not, and cannot, allege a single "rate of change" that is monitored by OME.  *See* Am. Compl., ¶¶ 17–19.[7]

The Federal Circuit has granted motions to dismiss in these circumstances.  *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming grant of a motion to dismiss because prosecution history estoppel barred patentees from succeeding on their infringement claim under doctrine of equivalents); *Metricolor LLC v. L'Oreal S.A.*, 791 Fed.Appx. 183, 188 (Fed. Cir. 2019) (finding that a patent claim was not sufficiently pleaded when the alleged functionality "plainly contradicted" the actual claim limitation).

Here, that Plaintiff accuses the same technology that was distinguished during prosecution is dispositive on this motion to dismiss.  A court may "consider documents attached to or

---

[6] The OME User Guide was incorporated into the Complaint.  Am. Compl., ¶ 24; *see Lone Star*, 594 F.3d at 387.

[7] That OME does not track the "rate of change" of any attributes is not surprising.  The '129 patent described checking the "rate of change" at individual nodes to check the global health of the network.  '129 patent, 1:58-60.  OME, on the other hand, is used to track the health of the managed nodes in the systems, not check for global network issues.  Ex. B (OME User Guide) at 251.

incorporated into the Complaint and matters of which judicial notice may be taken." *Auto–Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 6:15–CV–00091, 2015 WL 12868183, at *2 (W.D. Tex. June 24, 2015), report and recommendation adopted, 2015 WL 11004538 (W.D. Tex. July 15, 2015); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). "On a motion for judgment on the pleadings . . . the court may consider 'matters of public record' . . . Prosecution histories constitute public records." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018).

### B. Plaintiff Fails to Plausibly Allege That OMNM Monitors The "Rate Of Change Of The Usage" In A Node

After Defendant pointed out that OMNM was a third-party product in its initial motion, the Amended Complaint no longer contains ***any*** factual allegations related to OMNM. *See* Am. Compl., ¶¶ 15–19. The Amended Complaint does, however, still allege infringement by OMNM. *Id.*, ¶¶ 13–14. This allegation is deficient because the Amended Complaint does not—and cannot—allege that OMNM meets the "rate of change" limitation. Much like OME, OMNM describes receiving alerts about the health of the individual nodes. *See* OMNM User Guide at 359-444.[8] As such, Plaintiff has not plausibly alleged—and cannot plausibly allege—facts to suggest that OMNM tracks any alleged "rate of change" of a resource of the managed nodes.[9]

---

[8] The OMNM User Guide was incorporated into the Complaint. Am. Compl., ¶ 24; *see Lone Star*, 594 F.3d at 387.

[9] Even if Plaintiff had plausibly stated a claim as to OMNM, OMNM is a third-party product that is no longer sold as OEM software by Dell. *See* Ex. C (https://www.dell.com/support/article/en-us/how16844/changes-to-the-sales-and-support-processes-for-dell-emc-openmanage-network-manager?lang=en). As such, to the extent Plaintiff accuses OMNM, Dell is not the correct target of this lawsuit. Plaintiff should have been well aware of this fact as it relied upon manuals for OMNM from Dorado Software, Inc. ("Dorado"). *See* Original Compl. ¶ 18.

### C.     Plaintiff Fails To State A Claim or Induced And Contributory Infringement

Plaintiff's indirect infringement claims are deficient and should be dismissed.  As an initial matter, Plaintiff's failure to plausibly allege direct infringement precludes its claims of induced and contributory infringement.  Beyond that failing, Plaintiff has further failed to adequately plead any pre-suit knowledge by Defendants of the patent, or pre-suit knowledge by Defendants of alleged infringement.  Plaintiff also fails to plead a specific intent to induce infringement.  And Plaintiff has not pled, and cannot plead, that there are no substantial non-infringing uses.  Each of these failures independently warrants dismissal of Plaintiff's indirect infringement allegations.

### 1.     Plaintiff's Indirect Infringement Claims Fail Without Direct Infringement

Plaintiff's indirect infringement allegations are insufficient as a matter of law as Plaintiff fails to plausibly allege direct infringement.  *See supra* § IV.A.  It is axiomatic that "'[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement.'"  *Enplas*, 909 F.3d at 407 (citation omitted); *see also Intellectual Ventures*, 870 F.3d at 1329 ("A finding of direct infringement is predicate to any finding of indirect infringement . . .").  As a result, Plaintiff has also failed to adequately plead its claims of induced and contributory infringement, and these claims should be dismissed.

### 2.     Plaintiff Fails to Allege the Requisite Knowledge for Indirect Infringement

Plaintiff's indirect infringement claims fail because they do not adequately plead the required "knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA*, 135 S. Ct. at 1926.  As courts in this District have held, the knowledge requirements for indirect infringement require **pre-suit** knowledge.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite

knowledge for indirect infringement").  Moreover, this Court has held—earlier this year—that allegations of knowledge based on a prior filed complaint are not enough to overcome a motion to dismiss.  *See Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54 (dismissing indirect infringement claims where plaintiff's only allegation of knowledge was that "Defendant Apple has had knowledge of the '431 Patent since ***at least the filing of the original complaint***" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement") (quoting D.I. 28 (Am. Compl.) ¶ 44 (emphasis added)).

The Amended Complaint includes an erroneous footnote that attempts to distinguish *Aguirre* by asserting that "Delaware courts have since rejected this rule."  Am. Compl. ¶ 23, n.1. Plaintiff's statement that Delaware has rejected the pre-suit knowledge requirement is incorrect. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("[T]he complaint itself cannot serve as the basis for a defendant's actionable knowledge."); *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, C.A. No. 19-1239-CFC, 2020 WL 4365809, at *2 (D. Del. July 30, 2020) ("'The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim.  For that reason, the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement.'") (citation omitted). In any event, *this* Court has expressly adopted the pre-suit knowledge requirement, and continues to do so.  *See, e.g.*, *Parus*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54.

Despite this clear precedent, Plaintiff's only allegations of knowledge are based on the filing of its prior complaint asserting the same patent, which it inexplicably dismissed:

> ***In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products*** that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  ***As a result of the prior suit, Defendants had notice***

> *and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.* Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.

Am. Compl. ¶ 23 (emphases added). Like the allegations in *Parus*, WSOU's allegations of knowledge are limited to references to a prior filed complaint and thus fail to state a claim for indirect infringement. *See id.*; *Parus*, No. 6:19-cv-432, Feb. 20, 2020 Text Order GRANTING D.I. 54.[10] To make matters worse, Plaintiff's May 20, 2020 complaint was *never served*, so it cannot form the basis for Defendants' knowledge. *See* Rosenthal Decl., Ex. E (Docket for *WSOU v. Dell Inc., et al.*, No. 6-20-cv-00410) (showing dismissal prior to service of the complaint). Allowing Plaintiff to avoid the pre-suit knowledge requirement by filing a complaint, voluntarily dismissing that complaint, and refiling the same complaint two weeks later, would be at odds with the knowledge requirement itself.[11] And, it would elevate form over substance and encourage litigants to use such a tactic to essentially eviscerate the pre-suit knowledge requirement.

Plaintiff's failure to raise a plausible inference of pre-suit knowledge of the patent and knowledge of infringement are fatal to its indirect infringement claims, and as such these claims

---

[10] *See also Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the only allegation that purports to establish the knowledge element is the allegation that the complaint itself *or previous complaints in the same lawsuit establish the defendant's knowledge of the patent.*") (emphasis added); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("'Prior to suit' does not mean prior to the current iteration of the Complaint.").

[11] *See, e.g.*, *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) ("[B]ecause notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in *Global–Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement."); *Simplivity Corp. v. Springpath, Inc.*, No. CV 4:15-13345-TSH, 2016 WL 5388951, at *8 (D. Mass. July 15, 2016) ("The suggested 'knowledge via filing' framework dilutes the knowledge requirement to the point of meaninglessness, since by virtue of being sued for infringement, a party necessarily is aware of the patent-in-suit.")

should be dismissed.

### 3.    Plaintiff Fails to Allege the Requisite Specific Intent for Induced Infringement

Plaintiff also entirely fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).    Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced" others to infringe through their advertising, promotional materials, and two website citations.    *See* Am. Compl. ¶ 24.    Such conclusory allegations fail to present facts that demonstrate:  (1) Defendants knew that the alleged acts would infringe, and (2) Defendants knew that the promotion of their products would induce or encourage others to infringe the Asserted Patent.  *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *21 (finding Plaintiff's "generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient").    To support specific intent, Plaintiff must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—*i.e.*, "evidence of culpable conduct, direct to encouraging another's infringement." *Parity*, 2019 WL 3940952, at *2.[12]

---

[12] *See also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by following instructions in the links provided in the

Plaintiff's inducement claim should be dismissed because the Amended Complaint is entirely silent on a key requirement of induced infringement.

### 4.   Plaintiff Fails to Allege the Requisite Lack of Substantial Non-Infringing Uses for Contributory Infringement

Plaintiff's contributory infringement allegations also fail because Plaintiff did not "'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citation omitted). Plaintiff has not pled a lack of substantial non-infringing uses because it cannot do so.  Plaintiff's only allegation on these elements is a conclusory statement that repeats the legal elements.  *See* Am. Compl. ¶ 25.  As the Federal Circuit held in *Artrip*, conclusory allegations are not enough. 735 F. App'x at 713 (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use"). Furthermore, Plaintiff cannot plead facts to support these elements because the Accused Products may be configured to not calculate the "rate of change" at any network resource.  In fact, the Accused Products do not do so as discussed above.  Plaintiff's failure to raise a plausible inference of no substantial non-infringing uses is fatal to its contributory infringement claim, and as such it should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss WSOU's Amended Complaint in its entirety for failure to plausibly state a claim for

---

complaint.") (emphasis in original); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding mere citations to websites were insufficient to plead specific intent).

relief, without leave to amend.  Pursuant to L.R. CV-7(h), Defendants request an oral hearing on

the foregoing motion.

Dated:  October 30, 2020                      By:  */s/ Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX  78734-4775
Telephone:  512.263.2165
Facsimile:  512.263.2166

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Kyanna Sabanoglu
ksabanoglu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 30, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
